# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEARNING ENHANCEMENT | ) Case No. 16-35537 |
| CORPORATION, ET AL. | ) (Jointly Administered) |
| | ) |
| | ) Honorable Jack B. Schmetterer |
| Debtors.[1] | ) |
| | ) |

## ORDER (A) APPROVING THE SALE TO THE PURCHASER OR THE HIGHEST OR BEST OFFER AT AUCTION, FREE AND CLEAR OF LIENS, CLAIMS, LIABILITIES, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF

Upon the motion (the "*Sale Motion*")[2] of the above-captioned debtors and debtors in possession (the "*Debtors*" or "*Seller*"), pursuant to sections 363, 1107(a), and 1108 of title 11 of the Bankruptcy Code and Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and any other applicable Bankruptcy Rules, for an order (the "*Order*"), *inter alia*, (a) approving the Sale to JZA Holdings, Inc. ("*JZA*") or the highest or best offer at the Auction; and (b) granting related relief; and due notice of the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having considered the Sale Motion, the notice of Sale Motion, the Declaration of Josh Arlow submitted in support of the Sale Motion [Docket No. 54], and all other documents, papers,

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal taxpayer-identification number, are: (i) Learning Enhancement Corporation (8197) and (ii) The BrainWare Company (6181).

[2]   References to the Sale Motion refer to that certain *Motion for Entry of an Order (A) (I) Approving Procedures for the Sale Of Debtors' Tangible and Intangible Assets Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (II) Scheduling an Auction; (III) Approving Form and Manner of Notices Associated With the Auction; (IV) Setting a Final Sale Hearing; (B) Approving the Sale to the Buyer or the Highest or Best Offer at Auction; and (C) Granting Related Relief [Docket No. 13].*

and exhibits filed in connection therewith and support thereof, including the asset purchase

agreement, a copy of which is attached hereto as <u>Exhibit 1</u> (the *"Purchase Agreement"*); the

Court being informed that in accordance with the Bidding Procedures the Debtors received no

bids other than that of JZA and therefore cancelled the proposed auction; and the Debtors further

having informed the Court that in its business judgment the Debtors determined that JZA (also

referred to herein as the *"Purchaser"*) was the Successful Bidder, having made the highest and

best bid in the amount of $630,000; and it appearing that the Court has jurisdiction over this

matter; and the Court finding that the relief requested in the Sale Motion with respect to the Sale

constitutes an exercise of the Debtors' sound business judgment and is in the best interests of the

Debtors, their estate, and their creditors; and after due deliberation and consideration and good

and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED:

### <u>General</u>

A.     Unless otherwise indicated herein, all capitalized terms not otherwise defined in

this Order have the meanings ascribed to such terms in the Sale Motion, the Purchase

Agreement, the Bidding Procedures, or the Bidding Procedures Order (as defined herein) as

applicable; <u>provided</u>, <u>however</u>, that in the event of an inconsistency between the definitions set

forth in the Sale Motion, the Bidding Procedures Order, the Bidding Procedures, or the Purchase

Agreement, the meanings ascribed to such terms in the Purchase Agreement shall apply.

B.     On December 6, 2016, the Court entered that certain *Order (A) Establishing*

*Bidding Procedures in Connection with Sale of Debtors' Assets, (B) Approving the Form and*

*Manner of Notices, (C) Setting a Final Hearing, and (D) Granting Related Relief* [Docket No.

40] (the *"Bidding Procedures Order"*), pursuant to which the Court, *inter alia*, approved the

2

bidding procedures contained in the Sale Motion and annexed to the Bidding Procedures Order as <u>Exhibit 1</u>.

C.    As evidenced by the certificate of service filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Sale Motion and the Auction was provided in accordance with sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, and all other applicable Bankruptcy Rules and provisions of the Bankruptcy Code, and the Bidding Procedures Order, including timely and adequate service of the Auction Notice; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein, the Bidding Procedures Order, the Final Hearing, and/or the entry of this Order is required.

<b><u>The Sale Process for the Assets</u></b>

D.    The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring it to conduct the transactions contemplated by the Purchase Agreement (the "*Sale Transaction*"), including the sale of the Assets, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.

E.    The Debtors and the Purchaser have complied with the Bidding Procedures Order and the Bidding Procedures in all respects.

F.    Pursuant to the Bidding Procedures, as approved by the Court, the Purchaser submitted the highest and best offer for the Assets on the terms and conditions set forth in the Purchase Agreement.

G.    The Bidding Procedures afforded a full, fair, and reasonable opportunity for any entity to make a higher or better offer to purchase the Assets and no higher or better offer was timely made.

### The Sale of the Assets to the Purchaser

H.    The Debtors have agreed to the Purchase Agreement, this Order, and the transactions contemplated thereby and hereby.  The Sale Transaction is not being entered into fraudulently.  The Debtors have advanced sound business reasons for seeking authority to enter into the Purchase Agreement, to sell the Assets, as more fully set forth in the Sale Motion and as demonstrated by the Debtors in the filings related to this Sale Motion, and it is a reasonable exercise of the Debtors' business judgment to sell the Assets and to execute the Purchase Agreement with the Purchaser.

I.    Each and every provision of section 363 of the Bankruptcy Code has been complied with and is applicable to the sale of the Assets.

J.    The Purchaser is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Purchase Agreement was negotiated and proposed, and has been entered into by the parties, in good faith within the meaning of section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion.  The Purchaser did not engage in any collusion in placing its bid to purchase the Assets.  Absent a stay of the effectiveness of this Order, if any, the Debtors and the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction, at any time after the entry of this Order.

4

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

**General Provisions**

1.      The Sale Motion is GRANTED.

2.      All parties in interest had the opportunity to object to the relief requested in the Sale Motion and the Debtors received no objection prior to the Final Hearing.

**Approval of the Purchase Agreement**

3.      The Purchase Agreement, the terms and conditions thereof, and each of the transactions contemplated thereby, are approved in their entirety and are binding upon the parties thereto.  Upon entry of this Order, the covenants contained in the Purchase Agreement, to the extent (if any) not already enforceable by their terms, shall be fully enforceable by the parties to the Purchase Agreement in accordance with and subject to the terms and conditions of the Purchase Agreement.  The offer of the Purchaser, upon the terms and conditions set forth in the Purchase Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Purchase Agreement, is the highest and best offer received by the Debtors for the Assets.

4.      The Debtors have the right to convey, good, clear, marketable title to the Assets, are the sole lawful owners of the Assets, and pursuant to this Order have the full right to sell, transfer, convey, assign, and deliver the Assets to the Purchaser free and clear of all liens, claims, liabilities, and encumbrances.

**Transfer of the Assets to the Purchaser**

5.      Pursuant to sections 105(a) and 363 of the Bankruptcy Code, upon the Closing, the Assets shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all liens, claims, liabilities, and encumbrances.

6.    Pursuant to Sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and to comply with the terms of the Purchase Agreement and to consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order.

7.    This Order and the Purchase Agreement approved hereby shall be binding in all respects upon the Purchaser, the Debtors, and their estates, all creditors (whether known or unknown) of the Debtors, all interested parties, and their successors and assigns, including, but not limited to, any party asserting a lien, claim, liability, or encumbrance with respect to the Debtors' business or relating to the Assets.

### Miscellaneous Provisions

8.    The consideration provided by the Purchaser for the Assets constitutes reasonably equivalent value and fair consideration (as those terms may be defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

9.    The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith and at arms' length, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale Transaction are stayed pending such appeal by issuance of a stay prior to Closing.

10.    The Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

11.    The Sale Transaction may not be avoided under section 365(n) of the Bankruptcy Code.

12.    The Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects), to adjudicate disputes related to this Order or the Purchase Agreement.

13.    Notwithstanding Rule 6004(h), this Order shall be effective immediately upon entry and the Debtors is authorized to close the transactions contemplated by the Purchase Agreement immediately upon entry of this Order, subject to the terms of the Purchase Agreement.

14.    To the extent any conflicts exist with this Order and the Purchase Agreement, the terms of this Order shall govern and control; provided, however, that the rights and obligations of Purchaser under its bid, as reflected in the Purchase Agreement, shall not be altered without the consent of Purchaser.

Dated: Feb 24 2017, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**EXECUTION VERSION**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "*Agreement*") is made and entered into as of February 7, 2017, by and between JZA HOLDINGS, INC., an Illinois corporation, or its assigns (the "*Buyer*"), and LEARNING ENHANCEMENT CORPORATION and THE BRAINWARE COMPANY, each, an Illinois corporation (collectively, the "*Seller*"). Seller and Buyer are referred to, individually, as a "*Party*" and, collectively, as the "*Parties*."

## RECITALS

A.      Seller is in the business of developing and marketing learning enhancement tools for use by individuals seeking to improve brain function including tools specifically designed to improve cognition, memory, visual processing and auditory processing (the "*Business*").

B.      Seller has filed a voluntary petition for relief (the "*Bankruptcy Case*") under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*").

C.      The Business is located at 4802 N. Broadway, Suite 201, Chicago, IL 60640.

D.      Buyer is the holder of an allowed secured claim in the amount of $542,000 consisting of secured promissory note in the original principal amount of $450,000.00 (the "*JZA Note*"). The JZA Note is secured by liens on the Assets evidenced by that certain Security Agreement which provides a first priority lien and security interest in substantially all of LEC's assets. Further, pursuant to the Debtors' *Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Scheduling a Final Hearing; and (III) Approving Notice Procedures*, the Buyer is the holder of an allowed claim in the amount of $23,000 pursuant to a debtor-in-possession loan (the "*DIP Loan*").

E.      Upon the terms and subject to the conditions set forth herein and as authorized under sections 105 and 363 of the Bankruptcy Code, Buyer desires to acquire from Seller and Seller wishes to transfer, sell, convey, assign and deliver to Buyer, all of Seller's right, title and interest in and to the Acquired Assets listed in paragraph 2(a) below at the price and on the other terms and subject to the conditions specified below (such transaction to be referred hereinafter as the "*Proposed Transaction*").

F.      Seller believes, following consultation with Seller's advisors and upon consideration of available alternatives, that in light of the current liquidity and financial position of the Seller, a sale of the Acquired Assets (as defined below) is necessary to maximize value and is in the best interests of the Seller, its creditors, and other parties in interest.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the mutual promises set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**EXECUTION VERSION**

1.    <u>Definitions.</u>

As used in this Agreement, the following terms have the following respective meanings:

"*Acquired Assets*" shall have the meaning set forth in <u>Section 2(a)</u>.

"*Action*" means any claim, dispute, demand, cause of action or action asserted in any arbitration, litigation, adversary proceeding, mediation, suit, investigation or other proceeding and any appeal therefrom.

"*Agreement*" means this Asset Purchase Agreement.

"*Assigned Contracts*" shall have the meaning set forth in <u>Section 2(a)(vii)</u>.

"*Assignment and Assumption Agreement*" shall have the meaning set forth in <u>Section 4(b)(ii)</u>.

"*Assumed Liabilities*" shall have the meaning set forth in <u>Section 2(c)(i)</u>.

"*Auction*" shall have the meaning set forth in <u>Section 6(b)</u>.

"*Bankruptcy Case*" shall have the meaning set forth in <u>Section B</u>  of the Recitals.

"*Bankruptcy Code*" shall have the meaning set forth in <u>Section B</u>  of the Recitals.

"*Bankruptcy Court*" shall have the meaning set forth in <u>Section B</u> of the Recitals.

"*Bid Deadline*" means the date by which initial and qualified Competing Bids must be submitted.

"*Bidding Procedures*" shall have the meaning set forth in <u>Section 6(b)</u>.

"*Bill of Sale*" shall have the meaning set forth in <u>Section 4(b)(i)</u>.

"*Books and Records*" shall have the meaning set forth in <u>Section 2(a)(v)</u>.

"*Business*" shall have the meaning set forth in <u>Section A</u> of the Recitals.

"*Buyer*" shall have the meaning set forth in the Preamble.

"*Buyer's Secretary Certificate*" shall have the meaning set forth in <u>Section 4(d)(v)</u>.

"*Closing*" shall have the meaning set forth in <u>Section 4(a)</u>.

"*Closing Date*" shall have the meaning set forth in <u>Section 4(a)</u>.

**EXECUTION VERSION**

"*Deposit*" shall have the meaning set forth in <u>Section 3(a)</u>.

"*DIP Loan*" shall have the meaning set forth in <u>Section D</u> of the Recitals.

"*Encumbrances*" shall have the meaning set forth in <u>Section 2(a)</u>.

"*Environmental, Health and Safety Laws*" shall mean any legal requirements concerning environmental, health or safety matters.

"*Excluded Assets*" shall have the meaning set forth in <u>Section 2(b)</u>.

"*Excluded Liabilities*" shall have the meaning set forth in <u>Section 2(c)(iii)</u>.

"*Final Order*" shall mean an order of the Bankruptcy Court which has not been modified, amended, reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or reheating shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; *provided*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

"*Governmental Authority*" shall have the meaning set forth in <u>Section 5(a)(vi)</u>.

"*JZA Note*" shall have the meaning set forth in <u>Section D</u> of the Recitals.

"*Material Adverse Change*" shall mean any event, change, condition, development or effect that individually or in the aggregate, results in, or is reasonably expected to result in a material adverse change to (i) the Acquired Assets, the Assumed Liabilities, the Business or the operations, the results of operations or condition (financial or otherwise), of the Seller, taken as a whole or (ii) the ability of the Seller to perform its obligations under this Agreement, prior to the Closing Date, *provided, however*, that "Material Adverse Change" shall specifically exclude events, changes, conditions developments or effects in connection with or resulting from (A) the entry into this Agreement, the bankruptcy filing of Seller, or the public announcement thereof, or (B) changes in general economic conditions, financial markets or conditions generally affecting the Business, to the extent the Business is disproportionately affected by such changes, or (C) the ability of Buyer to gain access to, ownership of, control of, make any claim for or otherwise benefit from any operating losses or other tax events which may exist at or prior to Closing.

**EXECUTION VERSION**

"*Minimum Overbid*" shall have the meaning set forth in <u>Section 6(b)</u>.

"*Proposed Transaction*" shall have the meaning set forth in <u>Section E</u> of the Recitals.

"*Purchase Price*" shall have the meaning set forth in <u>Section 3(a)</u>.

"*Sale Order*" shall have the meaning set forth in <u>Section 4(d)</u>.

"*Seller*" shall have the meaning set forth in the Preamble.

"*Seller's Secretary Certificate*" shall have the meaning set forth in <u>Section 4(b)(iii)</u>.

2.    <u>Transfer of Assets.</u>

(a)    <u>Purchase and Sale of Acquired Assets.</u> On the Closing Date, in consideration of the covenants, representations, and obligations of Buyer hereunder, and subject to the conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase and accept from Seller, all of Seller's legal and beneficial right, title and interest of every kind and nature (including indirect and other forms of beneficial ownership), in and to the assets described in this Section 2(a) (the "*Acquired Assets*"), as the same shall exist on the Closing Date, free and clear of all liens of any kind (statutory or otherwise), encumbrances, claims (as defined in section 101(5) of the Bankruptcy Code), rights, demands, charges, mortgages, deeds of trust, options, pledges, security interests or similar interests, title defects, hypothecations, easements, rights of way, restrictive covenants, encroachments, variances, special use or conditional use permits, security agreements, rights of recovery, rights of first refusal, preemptive rights, judgments, conditional sale or other title retention agreements, or any other claims based on any theory that Buyer is a successor, transferee or continuation of the Seller or the Business, and other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever (collectively, "*Encumbrances*") to the fullest extent permitted by sections 105 and 363 of the Bankruptcy Code and applicable law, other than Assumed Liabilities (except as otherwise specified, each of the following capitalized terms in this <u>Section 2(a)</u> shall have the meanings ascribed to such terms in Article 9 of the Uniform Commercial Code):

(i)    all trademarks, trade names, service marks, corporate names, copyrights, mask works, patents, patent applications, trade secrets or other intellectual property rights used in, developed for use in or necessary to conduct the Business, and including the rights to institute or maintain any Action or investigation for and to recover damages for any past infringement thereof or any Actions of unfair competition relating thereto;

(ii)    all computer software (both source and object codes) and hardware, equipment, furniture, fixtures, and other tangible personal property on the Buyer's balance sheet specifically used in connection with the operation of the Acquired Assets or the Business as of the Closing Date;

4

**EXECUTION VERSION**

(iii)    all customer, prospect, dealer, and distributor lists, customer information and contact information, including associated client folders and electronic documents;

(iv)    all domain names, social media sites, and websites of the Business and the right to use such domain names, social media sites, and websites used at or for the Business;

(v)    all books and records and other records, documents and information which has been reduced to written, recorded, or encoded form relating to the Acquired Assets or the Business including but not limited to those related to filings or applications made with any governmental agency relating to the Acquired Assets (collectively, the "*Books and Records*");

(vi)    all sales literature, purchase orders and invoices, sales orders and sales order log books, correspondence, employee payroll and personnel records, product data, material safety data sheets, price lists, product demonstrations, quotes and bids and all product catalogs and brochures, if any;

(vii)    assignment of (i) that certain Neuroscience and Education License and Distribution Agreement dated July 22, 2013 by and between Elizabeth P. Hill and The BrainWare Company; (ii) that certain Office Lease Agreement dated October 7, 2013 by and between 4800-4812 N Broadway LLC and The BrainWare Company; (iii) Independent Sales Representative Agreement dated January 22, 2016 with David Jordan; (iv) Independent Sales Representative Agreement dated September 25, 2013 with Terrance Mohoruk; (v) Independent Sales Representative Agreement dated March 7, 2014 with Annette Simmons; (vi) SKO License and Reseller Agreement dated May 23, 2013 with SKO Learning; and (viii) The BrainWare Company Merchant Accounts, MID Numbers 8023637682 and 8023032398, provided by Converge/Elavon for credit card processing (collectively, the "*Assigned Contracts*");

(viii)    all related tangibles and intangibles used in the conduct of the Business and all rights to continue to use the Acquired Assets in the conduct of a going business; and

(ix)    all goodwill associated with the Acquired Assets.

(b)    Excluded Assets. Notwithstanding anything else to the contrary in this Agreement, all of Seller's assets, properties, rights or interests shall remain with Seller other than the Acquired Assets (collectively, the "*Excluded Assets*"), which Excluded Assets shall include, without limitation, the following:

(i)    all cash and cash equivalents;

(ii)    all contracts and leases other than the Assigned Contracts;

(iii)    all issued and outstanding shares of capital stock of Sellers;

EXECUTION VERSION

(iv)     any records of Seller's corporate existence, including any minute book, stock ledger and stock record book, but not including any records of that portion of the Business relating directly or indirectly to the Acquired Assets;

(v)     any records which the Seller is required by law to retain in its possession (as to which records the Seller shall provide copies to Buyer at or prior to the Closing) and any records related exclusively to any Excluded Asset or Excluded Liability;

(vi)     all insurance policies and rights to returns of premiums relating to such policies;

(vii)     all tax returns;

(viii)     any assets that Buyer designates to Seller in writing before closing as Excluded Assets;

(ix)     all causes of Action owned by the Seller not related to Seller's intellectual property, including, without limitation, all claims or causes of Action arising under Chapter 5 of the Bankruptcy Code; and

(x)     all rights of Seller under this Agreement.

(c)     Liabilities.

(i)     Assumed Liabilities. Upon the terms and subject to the conditions set forth in this Agreement and the Sale Order, on the Closing Date Buyer shall assume from Seller and agree to pay, perform, discharge or otherwise satisfy, when due (in accordance with their respective terms and subject to the respective conditions thereof), the liabilities, responsibilities, obligations, costs and expenses of Seller under the Assigned Contracts incurred from and after the Closing Date and no others (the "*Assumed Liabilities*"), including any cure costs associated with such Assigned Contracts.

(ii)     Assignment of Contracts and Rights. Buyer agrees that it will timely provide such information to Seller as is reasonably required by the Seller to provide "adequate assurance" pursuant to and in accordance with section 365 of the Bankruptcy Code with respect to the Assigned Contracts, upon request thereof and in order to facilitate assignment of such Assigned Contracts. Subject to the approval of the Bankruptcy Court and pursuant to the terms of the Sale Order, the Assigned Contracts will be assumed by Seller and assigned to Buyer on the Closing Date, as of the Closing Date, pursuant to section 365(f) of the Bankruptcy Code.

(iii)     Excluded Liabilities. Except for the Assumed Liabilities, Buyer shall not be deemed to have assumed or agreed to be responsible for the liabilities, obligations and commitments of Seller of whatever kind or nature (whether primary or secondary, direct or indirect, absolute or contingent, known or unknown, accrued or not accrued, or otherwise) whether or not arising out of the ownership of the Business or the Acquired Assets (collectively, the

**EXECUTION VERSION**

"*Excluded Liabilities*"). Without limiting the generality of the preceding sentence, the Excluded Liabilities include (except to the extent constituting Assumed Liabilities):

(A)    liabilities, obligations and commitments for taxes of Seller (whether relating to the Acquired Assets or otherwise) and any and all taxes of any other person that Seller is liable for as a result of joint and several liability, transferee liability, successor liability, contractual liability, pursuant to any law, or otherwise;

(B)    liabilities, obligations and commitments of Seller in respect of transaction costs with respect to this Agreement or the Proposed Transaction;

(C)    any claim of liability for injury or damage to person or property caused by the use or operation of products manufactured, sold, installed, or serviced by or on behalf of Seller prior to the Closing; and

(D)    liabilities, obligations, and commitments of Seller arising from the Excluded Assets or from Excluded Liabilities.

(d)    <u>Instruments of Transfer.</u> The sale, assignment, transfer, conveyance, and delivery of the Acquired Assets to Buyer shall be made pursuant to the Sale Order and other instruments of transfer and assignment as defined and provided for in <u>Section 4</u> below and the other provisions of this Agreement. In addition thereto, Seller shall take such other actions, and execute and deliver any and all other instruments, as may reasonably be requested by Buyer or its counsel to further evidence or effect the transfer, conveyance, assignment and delivery (including,    without limitation, instruments for filing with any governmental or quasi-governmental offices) of the Acquired Assets to Buyer free and clear of Encumbrances, other than Assumed Liabilities, and to effectuate and perfect the Proposed Transaction. From the date hereof until the Closing, Seller shall use commercially reasonable efforts to obtain settlement or stipulations with any party that objects to the assumption and assignment of an Assigned Contract.

3.    <u>Consideration.</u>

(a)    The consideration for the Acquired Assets paid by Buyer to Seller for the Acquired Assets shall be $630,000 (the "*Purchase Price*") consisting of: $542,000.00 Credit Bid of the JZA Note; $23,000 credit bid of the DIP Loan; and $65,000 cash ($30,000 of which has already been deposited, the "*Deposit*").

(b)    On the Closing Date, subject to the terms and conditions set forth in this Agreement and the Sale Order, the Purchase Price shall be paid as follows:

(i)    Buyer shall transfer cash in the amount of $35,000 in immediately available United States funds to the Seller. Buyer agrees to waive any claim related to the JZA Note and the DIP Loan and hereby agrees to sign any necessary documentation needed to evidence same; and

**EXECUTION VERSION**

(ii)    in addition to the foregoing consideration, as consideration for the grant, sale, assignment, transfer and delivery of the Acquired Assets free and clear of Encumbrances (other than Assumed Liabilities), the Buyer shall assume the Assumed Liabilities.

(c)    The Purchase Price shall be allocated to the Acquired Assets as mutually agreed by Buyer and Seller.  All Tax returns and reports filed by Buyer and Seller with respect to the transactions contemplated by this Agreement shall be consistent with such allocation.

4.    Closing.

(a)    Closing Date.  The closing (the "*Closing*") of the transactions contemplated by this Agreement shall take place within fourteen (14) days , unless otherwise agreed upon by the Parties, after the determination that Buyer has become the Successful Bidder (the "*Closing Date*"), as defined in the Bidding Procedures, at the offices of Seller's counsel.  Immediately following the Closing, Seller shall make available for delivery to Buyer the Acquired Assets at the Seller's premises.

(b)    Seller's Deliveries to Buyer at Closing.  On or prior to the Closing Date, Seller shall make the following deliveries to Buyer:

(i)    to the extent requested and prepared by Buyer and acceptable to Seller in its discretion, a counterpart Bill of Sale dated as of the Closing Date (the "*Bill of Sale*");

(ii)    to the extent requested and prepared by Buyer and acceptable to Seller in its discretion a counterpart Assignment and Assumption Agreement evidencing the assignment, to the extent assignable,  of all patents and patent applications, all domain names, social media sites, and all rights to the webpages of Sellers to the extent they related to the Business, all trademarks, services marks and all copyrights related to the Business, duly executed by Seller (the "*Assignment and Assumption Agreement*");

(iii)    Secretary's Certificate, duly executed by the Secretary of the Seller (the "*Seller's Secretary Certificate*");

(iv)    the Books and Records;

(v)    a certificate of a duly authorized officer of Seller attesting to Seller's compliance with the conditions set forth in Section 5(b) hereof;

(vi)    the Acquired Assets; and

(vii)    any such other documents, certificates, and instruments reasonably requested by Buyer and contemplated by this Agreement to be delivered by Seller to Buyer at the Closing to consummate the transactions contemplated by this Agreement.

(c)    Buyer's Deliveries to Seller at Closing.  On or prior to the Closing Date, Buyer shall make the following deliveries to Seller:

**EXECUTION VERSION**

(i)    the Purchase Price to be delivered by Buyer directly to Seller at the Closing under Section 3;

(ii)    to the extent applicable, a counterpart Bill of Sale dated as of the Closing Date, duly executed by Buyer;

(iii)    to the extent applicable a counterpart Assignment and Assumption Agreement, duly executed by Buyer;

(iv)    a certificate of a duly authorized officer of Buyer attesting to Buyer's compliance with the conditions set forth in Section 5(a) hereof;

(v)    a Secretary's Certificate, duly executed by the Secretary of the Buyer (the "*Buyer's Secretary Certificate*");

(vi)    the resolutions of the shareholders and board of directors of Buyer, duly adopted and in effect, which authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby; and

(viii)    any such other documents, certificates, and instruments reasonably requested by Seller and contemplated by this Agreement to be delivered by Buyer to Seller at the Closing to consummate the transactions contemplated by this Agreement.

(d)    Sale Order.    As a condition to the closing of the Proposed Transaction, the Bankruptcy Court shall have entered an order or orders (which shall not have been stayed and which shall have become final), in form and substance reasonably acceptable to the Buyer, authorizing the sale, transfer, assignment, conveyance, and delivery of the Acquired Assets to Buyer free and clear of all Encumbrances, other than Assumed Liabilities, and authorizing the Seller to consummate the Proposed Transaction with the Buyer (the "*Sale Order*").

5.    Conditions Precedent to Closing; Termination.

(a)    Conditions to Seller's Obligations. In addition to the conditions to Closing set forth in Section 4 hereof, Seller's obligation to make the deliveries required of Seller on the Closing Date and otherwise consummate the Proposed Transaction shall be subject to the satisfaction, or waiver by Seller in its sole discretion, of each of the following conditions:

(i)    Buyer shall have performed and complied in all material respects with the covenants and obligations required by this Agreement to be performed or complied with by Buyer at or prior to the Closing Date (except that those covenants and obligations which are qualified as to materiality, Material Adverse Change or similar expressions shall have been performed and complied with in all respects).

(ii)    All of the representations and warranties of Buyer contained herein shall have been true and correct in all material respects when made and shall continue to be true and

**EXECUTION VERSION**

correct on the Closing Date in all material respects (except that those representations and warranties which are qualified as to materiality, Material Adverse Change or similar expressions shall have been true and correct in all respects or shall continue to be true and correct on the Closing Date in all respects, as applicable); *provided*, that representations and warranties that are confined to a specified date shall speak only as of such date.

(iii)     Each of the deliveries required to be made to Seller pursuant to <u>Section 4(c)</u> shall have been so delivered.

(iv)     Buyer shall have delivered, or shall be prepared to deliver to Seller on the Closing Date, all cash and other documents required of Buyer to be delivered on the Closing Date.

(v)     Buyer shall have delivered to Seller appropriate evidence of all necessary entity action by Buyer in connection with the Proposed Transaction, including, without limitation: (A) certified copies of resolutions duly adopted by Buyer approving the transactions contemplated by this Agreement and authorizing the execution, delivery, and performance by Buyer of this Agreement; and (B) a certificate as to the incumbency of the parties executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated by this Agreement.

(vi)     No Action, suit or other proceedings shall be pending before any court, tribunal or governmental authority (each, a "*Governmental Authority*") seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Authority having appropriate jurisdiction.

(vii)     Neither the consummation nor the performance of any of the transactions contemplated by this Agreement will, directly or indirectly (with or without notice or lapse of time), materially contravene, or conflict with, or result in a material violation of, or cause Seller to suffer any material adverse consequence under, any applicable law, other than due to any act or omission of Seller.

(viii)     The Bankruptcy Court shall have issued the Sale Order which shall be a Final Order and not be subject to any stay.

(b)     <u>Conditions to Buyer's Obligations.</u> In addition to the conditions to Closing set forth in <u>Section 4</u> hereof, Buyer's obligation to make the deliveries required of Buyer on the Closing Date, and to otherwise close the Proposed Transaction contemplated herein, shall be subject to the satisfaction, or waiver by Buyer in its sole discretion, of each of the following conditions:

(i)     Seller shall have performed and complied in all material respects with the covenants and obligations required by this Agreement to be performed or complied with by Seller at or prior to the Closing Date (except that those covenants and obligations which are qualified as to materiality, Material Adverse Change or similar expressions shall have been performed and complied with in all respects).

**EXECUTION VERSION**

(ii)     All of the representations and warranties of Seller contained herein shall have been true and correct in all material respects when made and shall continue to be true and correct on the Closing Date in all material respects (except that those representations and warranties which are qualified as to materiality, Material Adverse Change or similar expressions shall have been true and correct in all respects or shall continue to be true and correct on the Closing Date in all respects, as applicable); *provided*, that representations and warranties that are confined to a specified date shall speak only as of such date.

(iii)     Each of the deliveries required to be made to Buyer pursuant to <u>Section 4(c)</u> shall have been so delivered.

(iv)     Seller shall have delivered possession of all physical assets which constitute Acquired Assets, and have delivered passcodes and other information that would allow for Buyer to use and possess and protect any Acquired Assets, together with all other documents reasonably requested by Buyer or required of Seller to be delivered on the Closing Date, including but not limited to all consents by third parties, including Governmental Authorities, that may be required in order to transfer good and marketable title to the Acquired Assets.

(v)     No action, suit or other proceedings shall be pending before any Governmental Authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, seeking to obtain relief in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Authority having appropriate jurisdiction.

(vi)     Neither the consummation nor the performance of any of the transactions contemplated by this Agreement will, directly or indirectly (with or without notice or lapse of time), materially contravene, or conflict with, or result in a material violation of, or cause Seller to suffer any material adverse consequence under, any applicable law, other than due to any act or omission of Seller.

(vii)     The Bankruptcy Court shall have issued the Sale Order, in form and substance acceptable to Buyer, which shall be a Final Order.

(vii)     Seller shall have delivered to Buyer appropriate evidence of all necessary entity action by Seller in connection with the Proposed Transaction, including, without limitation: (A) certified copies of resolutions duly adopted by Seller approving the transactions contemplated by this Agreement and authorizing the execution, delivery, and performance by Seller of this Agreement; and (B) a certificate as to the incumbency of the parties executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated by this Agreement.

(c)     <u>Contingencies</u>.  The Buyer's duties and obligations under this Agreement are specifically contingent upon the happening of the following events (in addition to the Seller's duties and obligations being contingent on subsection (i) below. If all of these events are not fully satisfied to the applicable Party's satisfaction prior to Closing (or such other date as is specifically

**EXECUTION VERSION**

specified below), then Buyer and Seller shall have no further obligation under this Agreement which will become null and void, and neither party shall have any further duties or obligation under this Agreement. The contingencies are:

(i)  The Parties' agreement of the form and substance of this Agreement and any associated exhibits and schedules as each Party acknowledges that, at the time of the execution of this Agreement and notwithstanding anything contrary herein, exhibits and schedules may have yet to be completed by the Parties prior to Closing.

(d)  Termination. This Agreement may be terminated at any time prior to the Closing Date:

(i)  by the mutual written consent of Buyer and Seller;

(ii)  by Buyer (A) upon written notice if all of the contingencies set forth in Section 5(b) are not met; (B) upon written notice in the event of a material breach of any representation or warranty, or covenant or agreement to be performed or complied with by Seller pursuant to the terms of this Agreement or any other agreement contemplated hereby, which breach would result in a condition to Closing set forth in Section 5(b) hereof becoming incapable of fulfillment or cure (which condition has not been waived by Buyer in writing) (as may be extended pursuant to Section 4(b) hereof); (C) if a Material Adverse Change has occurred and is continuing; (D) if the Bankruptcy Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or (E) if the Sale Order as entered by the Bankruptcy Court includes changes thereto which are not reasonably acceptable to Buyer;

(iii)  by Seller upon written notice (a) if the contingencies set forth in Section 5(a) are not met or (b) in the event of a material breach of any representation or warranty, or covenant or agreement to be performed or complied with by Buyer pursuant to the terms of this Agreement or any other agreement contemplated hereby, which breach would result in a condition to Closing set forth in Section 5(a) hereof becoming incapable of fulfillment or cure (which condition has not been waived by Seller in writing);

(iv)  by either Buyer or Seller if any Governmental Authority having competent jurisdiction shall have issued a final, non-appealable order, decree, ruling or injunction (other than a temporary restraining order) restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement or any other agreement contemplated hereby; *provided, however*, that the right to terminate this Agreement under this Section 5(d) shall not be available to any Party who shall not have complied with its obligations, if any, hereunder to avoid the issuance of such order, decree, ruling or injunction;

(v)  if Buyer is not the Successful Bidder, as defined in the Bidding Procedures, of the Acquired Assets at the Auction, and is not chosen as a Back-Up Bidder (as defined in the Bidding Procedures).

(e)  Effect of Termination. Except as set forth herein, in the event that this Agreement is validly terminated as provided herein, then each of the Parties shall be relieved of its duties and

**EXECUTION VERSION**

obligations arising under this Agreement effective as of the date of such termination and such termination shall be without liability to the Buyer or Seller.

6.    Bidding Procedures; Auction.

    (a)    Intentionally Omitted.

    (b)    Bidding Procedures.  The transaction contemplated by this Agreement shall be subject to competitive bidding at an auction (the "*Auction*") to be conducted on February 15, 2017, by Seller in accordance with those certain Bidding Procedures approved by the Court on December 6, 2016 [Docket No. 40] (the "*Bidding Procedures*").  Any qualified bid shall be equal to the Purchase Price plus $10,000.00 (*i.e.*, $640,000, the "*Minimum Overbid*").

    (c)    Pre-Auction Activities.  Buyer acknowledges that Seller has marketed, and will continue to market through the date of the Auction, the Acquired Assets to potential purchasers.

7.    Seller's Representations and Warranties. In addition to the representations and warranties contained elsewhere in this Agreement, Seller hereby makes the following representations and warranties to Buyer as of the date hereof and the Closing Date.

    (a)    Organization, Standing, and Power.  BrainWare is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Illinois and has all requisite entity power and authority to own, lease and operate its properties and assets, to carry on its business as now being conducted and to execute, deliver, and subject to Bankruptcy Court approval perform this Agreement and all writings relating hereto.  BrainWare is duly qualified or licensed to do business in and is in good standing as a foreign corporation in all jurisdictions where Seller is required to be qualified or licensed to do business as a foreign corporation.  Learning Enhancement Corporation was involuntarily dissolved on March 14, 2014.

    (b)    Authorization of Seller; No Conflict. Subject to the entry of the Sale Order and authorization as required by the Bankruptcy Court, (i) Seller has the requisite corporate power and authority to execute and deliver this Agreement and the other documents contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder and to consummate the Proposed Transaction, (ii) the execution and delivery by Seller of this Agreement and the other documents contemplated hereby to which it is a party, the performance of its obligations hereunder and thereunder and the consummation by it of the Proposed Transaction have been duly authorized by all necessary corporate actions on the part of Seller, (iii) this Agreement and each other document contemplated hereby to which Seller is a party will constitute, upon the mutual execution and delivery thereof, the legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and similar laws relating to or affecting creditors generally and by general equity principles (regardless of whether such enforceability is considered in a proceeding in equity or at law), and (iv), except as would not result in a Material Adverse Change, the execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller do not and will not: (A) conflict with or result in a breach of any organizational documents of Seller; (B) violate any statute, law, rule or regulation, or any order, writ, injunction

Case 16-35537   Doc 67   Filed 02/24/17   Entered 02/27/17 07:51:36   Desc Main
Case 16-35537   Doc 51   Filed 02/07/17   Entered 02/07/17 17:20:06   Desc Main
Document   Page 22 of 30
Document   Page 14 of 22

**EXECUTION VERSION**

or decree of any court or other Governmental Authority; or (C) result in the creation or imposition of any Encumbrance other than an Assumed Liability upon any of the properties or assets of Seller.

(c)     <u>Title and Validity</u>. Seller owns and holds good and marketable title to all of the Acquired Assets.

(d)     <u>Actions.</u> Except as would not result in a Material Adverse Change, there is no Action that questions or challenges the validity of this Agreement or the other documents contemplated hereby or any Action taken or proposed to be taken by Seller pursuant hereto or thereto or in connection with the Proposed Transaction.

(e)     <u>Compliance with Laws</u>. (i) Seller is not in violation of any laws, rules or regulations relating to the Acquired Assets, (ii) Seller has not been notified in writing and has no knowledge that it has been charged with or threatened in writing with, any charge concerning any violation of any provision of any law, rule or regulation relating to the Acquired Assets that has not already been resolved, and (iii) Seller is not in violation of, or in default under, and no event has occurred which, with the lapse of time or the giving of notice, or both, would result in the violation of or default under, the terms of any judgment, decree, order, injunction or writ of any Governmental Authority relating to the Acquired Assets.

(f)     <u>Approvals</u>. Other than entry of the Sale Order and except (i) for consents required to assign the Assigned Contracts, if any, under section 365 of the Bankruptcy Code, and (ii) as would not result in a Material Adverse Change, no approval of any Governmental Authority or other person or entity is required to be made, obtained or given by or with respect to Seller in connection with the execution or delivery by Seller of this Agreement and the other documents contemplated hereby to which it is a party, the performance by it of its obligations hereunder or thereunder or the consummation by it of the Proposed Transaction, including without limitation the transfer of the Acquired Assets to Buyer.

(g)     <u>Broker or Finder's Fee</u>. Seller has not authorized any person or entity to act as broker, finder, banker, consultant, intermediary or in any other similar capacity which would entitle such person or entity to any investment banking, brokerage, finder's or similar fee in connection with the Proposed Transaction.

(h)     <u>Environmental, Health and Safety Matters</u>. To the best of Seller's knowledge:

(i)     The current operations of the Business comply with Environmental, Health and Safety Laws, and Seller has not received written notice alleging that the activities of the Business are in violation of any Environmental, Health and Safety Laws;

(ii)     There has been no release of any hazardous substances that requires reporting, investigation or remedial action by Seller under applicable Environmental, Health and Safety Laws; and

(iii)     Seller has made available or provided Buyer with copies of all material documents, records and information in Seller's possession concerning the condition of the

**EXECUTION VERSION**

environment at any of the properties on which it conducts business, including environmental audits and environmental site assessments.

(i)     Third Party Rights.  Other than assets that are part of the Acquired Assets that not exclusively owned by Seller, the Seller is not a party to any contract, agreement, or understanding (formal or informal) that would (i) require Buyer to disclose or assign (in whole or in part) any Acquired Asset to any third party, (ii) limit the Buyer's exclusive right to own and use the Acquired Assets, (iii) require the Buyer to pay any royalty, license fee, sales commission, finder's fee or any other fee, cost or charge or any kind or character to any third party, or (iv) require the Buyer to share any revenues or profits with any third party.

8.     Buyer's Warranties and Representations.  In addition to the representations and warranties contained elsewhere in this Agreement, Buyer hereby makes the following representations and warranties to Seller as of the date hereof and the Closing Date:

(a)     Organization, Standing and Power.  Buyer is a Corporation duly incorporated, validly existing and in good standing under the laws of the State of Illinois. Buyer has all requisite entity power and authority to own, lease, and operate the Acquired Assets from and after the Closing Date, and to execute, deliver and perform this Agreement and all agreements contemplated hereby.

(b)     Authorization of Buyer; No Conflict.  (i) Buyer has the requisite power and authority to execute and deliver this Agreement and the other documents contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder and to consummate the Proposed Transaction, (ii) the execution and delivery by Buyer of this Agreement and the other documents contemplated hereby to which it is a party, the performance of its obligations hereunder and thereunder and the consummation by it of the Proposed Transaction have been duly authorized by all necessary organizational actions on the part of Buyer, (iii) this Agreement and each other document contemplated hereby to which Buyer is a party will constitute, upon the mutual execution and delivery thereof, the legal, valid and binding obligation of Buyer, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and similar laws relating to or affecting creditors generally and by general equity principles (regardless of whether such enforceability is considered in a proceeding in equity or at law), and (iv) the execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer do not and will not: (A) conflict with or result in a breach of any organizational documents of Buyer; (B) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or other Governmental Authority; or (C) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound.

(c)     Reliance, Due Diligence Investigation.  Buyer has undertaken such investigation and has been provided with and has evaluated such additional documents and information as it has deemed necessary to enable it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement.  Buyer is relying solely on its own

**EXECUTION VERSION**

independent knowledge, review, investigation, and inspection of any documents and/or the employees, operations, assets, facilities, finances, business and prospects of the Business of Seller and is not relying on any written or oral statements, representations, promises, warranties, conditions or guarantees whatsoever, whether express, implied, by operation or law or otherwise, concerning any such matters, or the completeness of any information provided in connection therewith, except as otherwise specifically set forth in Section 7.

(d)    <u>Approvals.</u> Other than entry of the Sale Order, no approval of any Governmental Authority or other person or entity is required to be made, obtained or given by or with respect to Buyer in connection with the execution or delivery by Buyer of this Agreement and the other documents contemplated hereby to which it is a party, the performance by it of its obligations hereunder or thereunder or the consummation by it of the Proposed Transaction.

(e)    <u>Broker or Finder's Fee.</u> Buyer has not authorized any person or entity to act as broker, finder, banker, consultant, intermediary or in any other similar capacity which would entitle such person or entity to seek payment from Seller of any investment banking, brokerage, finder's or similar fee in connection with the transactions contemplated by this Agreement or any of the other documents contemplated hereby.

9.    <u>"AS IS, WHERE IS" Transaction.</u> Buyer hereby acknowledges and agrees that, except as otherwise set forth in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets (including, without limitation, income to be derived or expenses to be incurred in connection with the Acquired Assets). Buyer further acknowledges that, at or prior to the Closing Date, Buyer shall have conducted an independent inspection, review, examination and investigation of the Acquired Assets and all matters relating thereto as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Acquired Assets, with the exception of the representations set forth in this Agreement, Buyer shall do so based solely upon such independent inspection and investigation. Accordingly, except for such representations and warranties set forth herein, Buyer will accept the Acquired Assets on the Closing Date **"AS IS"**, **"WHERE IS,"** and **"WITH ALL FAULTS."**

10.    <u>Actions Prior to Closing.</u>

(a)    <u>Conduct of Business.</u> From the date hereof until the Closing Date, Seller shall (i) use commercially reasonable efforts to conduct its business in the ordinary course consistent with past practice, (ii) use commercially reasonable efforts to preserve intact the Acquired Assets; and (iii) maintain the Books and Records with respect to the Acquired Assets in accordance with the reasonable business practices.

(b)    <u>Access.</u> Seller shall afford Buyer and its representatives reasonable access during normal business hours throughout any period from and after the date hereof until the Closing Date, the Books and Records, files, pleadings, data base, documents, properties, facilities and employees of Seller relating to the Acquired Assets, as Buyer may reasonably request; *provided* that such reasonable access shall not unduly interfere with Seller's ongoing business operations or obligations.

**EXECUTION VERSION**

11.   <u>Miscellaneous.</u>

(a)   <u>Notices.</u> Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as of three (3) days after the date of mailing. Mailed notices shall be addressed as set forth below, but each Party may change his address by written notice in accordance with this Section 11(a).

To Buyer:

JZA Holdings, Inc.
Attn: Elizabeth Perkins
1550 Sheridan Road, Unit 4E
Wilmette, IL 60091

With a copy to:

Ram Natarajan, Esq.
Natarajan Worstell LLC
33 N. LaSalle St., Suite 1930
Chicago, IL 60602

To Seller:

Learning Enhancement Corporation
The BrainWare Company
PO Box 409037
Chicago, Illinois 60640

With a copy to:

Matthew E. McClintock, Esq.
Goldstein & McClintock LLLP
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604

(b)   <u>Entire Agreement</u>. This Agreement, together with the agreements and documents referenced herein, contains the entire agreement between the Parties relating to the subject matter hereof. This Agreement supersedes any letters of intent that were previously executed by the Parties relating to the Acquired Assets. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing signed by the Parties.

(c)   <u>Modification</u>. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto.

(d)   <u>Closing Date</u>. All actions to be taken on the Closing Date pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

(e)   <u>Severability</u>. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materiality adverse to any party. Upon such a determination, the Parties shall negotiate in good

**EXECUTION VERSION**

faith to modify this Agreement so as to affect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible.

(f)     Further Assurances. Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the Proposed Transaction or the intentions of the Parties with respect thereto.

(g)     Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

(h)     Brokerage Obligations. If any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or Seller in connection with the transactions contemplated by this Agreement (other than any claims of Seller's broker, for which Seller shall be solely responsible), all such claims shall be handled and paid by the Party whose actions form the basis of such claim and such Party shall indemnify, defend (with counsel reasonably satisfactory to the other Party), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the Proposed Transaction.

(i)     Payment of Fees and Expenses. Except as otherwise provided herein, each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the Proposed Transaction.

(j)     Survival. The Parties hereto agree that the representations and warranties contained in this Agreement shall not survive the Closing Date and no Person shall have any liability for any breach thereof. The Parties hereto agree that the covenants contained in this Agreement to be performed after the Closing Date, if any, shall survive the Closing Date hereunder, and each Party hereto shall be liable to the other after the Closing for any breach hereof.

(k)     Assignment. This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Parties may grant or withhold in their sole and absolute discretion; provided, however, that Buyer shall be permitted, upon prior notice to Seller, to assign all or part of its rights or obligations hereunder to one or more affiliates of Buyer and, upon such assignment, Buyer shall be released from any of its obligations or liabilities hereunder.

(l)     Binding Effect. This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

**EXECUTION VERSION**

    (m)    <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to the conflicts of law principles thereof.

    (n)    <u>Submission to Jurisdiction; Consent to Service of Process</u>.

    (i)    The Bankruptcy Court shall have and retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Proposed Transaction, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in <u>Section 11(a)</u> hereof; *provided, however*, that if the Bankruptcy Case has not yet been commenced, or the Bankruptcy Court declines jurisdiction after the Bankruptcy Case has closed or for any other reason, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute maybe enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

    (ii)    EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER ACQUISITION DOCUMENTS.

    (o)    <u>Good Faith</u>. The Parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing Date.

    (p)    <u>Construction</u>. In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

    (q)    <u>Counterparts</u>. This Agreement may be signed in counterparts. The Parties further agree that this Agreement may be executed by the exchange of facsimile or PDF signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

    (r)    <u>Time is of the Essence</u>. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

EXECUTION VERSION

(s)    <u>Interpretation and Rules of Construction</u>. In this Agreement, except to the extent that the context otherwise requires:

(i)    when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

(ii)    the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

(iii)    whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

(iv)    the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

(v)    all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

(vi)    the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

(vii)    any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

(viii)    references to a person are also to its permitted successors and assigns; and

(ix)    the use of "or" is not intended to be exclusive unless expressly indicated

(t)    <u>Public Announcement.</u> Buyer and Seller shall not issue any such press release or make any such public statement or public communication without the prior written consent of the other Party, which shall not be unreasonably withheld or delayed; *provided, however*, that a Party may, without the prior consent of the other Party, issue such press release or make such public statement as may, upon the advice of counsel, be required by applicable law, any Governmental Authority with competent jurisdiction or any listing agreement with any national securities exchange.

(u)    <u>No Third Party Beneficiaries</u>. Except as and to the extent otherwise provided herein, nothing in this Agreement is intended, nor shall anything herein be construed, to confer any rights, legal or equitable, in any person or entity other than the Parties hereto and their respective successors and permitted assigns.

**EXECUTION VERSION**

    (v)    <u>Closing Costs.</u> Each party shall be responsible for its own attorney's fees and other costs relating to this Proposed Transaction. Notwithstanding the foregoing, it is anticipated that the costs and fees of the Seller are to be specified for in the bankruptcy pleadings and is anticipated by the parties that such costs and fees of Seller shall be paid by Seller's secured lender. If such party is ultimately not willing to pay such amounts at the Closing (and they are not otherwise satisfied), Buyer shall have the rights to terminate this Agreement as specified herein.

    **IN WITNESS WHEREOF,** the Parties have executed this Agreement on and as of the date first written above.

BUYER:                        **JZA HOLDINGS, INC.**

By: *[signature]*
Name: *Elizabeth P Hill*
Title: *President*

SELLER:                        **LEARNING ENHANCEMENT CORPORATION**

By:_____
Name: _____
Title: _____

**THE BRAINWARE COMPANY**

By:_____
Name: _____
Title: _____

2

**EXECUTION VERSION**

(v)    <u>Closing Costs.</u> Each party shall be responsible for its own attorney's fees and other costs relating to this Proposed Transaction. Notwithstanding the foregoing, it is anticipated that the costs and fees of the Seller are to be specified for in the bankruptcy pleadings and is anticipated by the parties that such costs and fees of Seller shall be paid by Seller's secured lender. If such party is ultimately not willing to pay such amounts at the Closing (and they are not otherwise satisfied), Buyer shall have the rights to terminate this Agreement as specified herein.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on and as of the date first written above.

**BUYER:**                    **JZA HOLDINGS, INC.**

By: _____
Name: _____
Title: _____

**SELLER:**                    **LEARNING ENHANCEMENT CORPORATION**

By: _*Roger Stark*_
Name: _ROGER STARK_
Title: _CEO_

**THE BRAINWARE COMPANY**

By: _*Roger Stark*_
Name: _ROGER STARK_
Title: _CEO_

2